*RECOMMENDED FOR FULL-TEXT* PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0032P (6th Cir.)
File Name: 00a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JUDY G. MORRIS,
     *Plaintiff-Appellant,*

    *v.*

OLDHAM COUNTY FISCAL
COURT; JOHN W. BLACK,
County Judge/Executive;
BRENT LIKINS,
    *Defendants-Appellees.*

No. 98-6117

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 96-00128—Charles R. Simpson, III, Chief District
Judge.

Argued: August 10, 1999

Decided and Filed: January 20, 2000

Before: KRUPANSKY, BOGGS, and CLAY, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Kenneth S. Handmaker, MIDDLETON &
REUTLINGER, Louisville, Kentucky, for Appellant.

1

R. Thaddeus Keal, LANDRUM & SHOUSE, Louisville, Kentucky, Stuart E. Alexander, III, TILFORD, DOBBINS, ALEXANDER, BUCKAWAY & BLACK, Louisville, Kentucky, for Appellees. **ON BRIEF:** Kenneth S. Handmaker, MIDDLETON & REUTLINGER, Louisville, Kentucky, Kyle P. Williams, WILDER, LEWIS & WILLIAMS, Jefferson, Indiana, for Appellant. R. Thaddeus Keal, David Whalin, LANDRUM & SHOUSE, Louisville, Kentucky, Stuart E. Alexander, III, TILFORD, DOBBINS, ALEXANDER, BUCKAWAY & BLACK, Louisville, Kentucky, for Appellees.

BOGGS, J., delivered the opinion of the court, in which KRUPANSKY, J., joined. CLAY, J. (pp. 21-30), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge.  Judy Morris appeals the district court's grant of summary judgment for defendants, who include the Oldham County (KY) Fiscal Court and Brent Likins, her former supervisor at the Oldham County Road Department.  Morris claims that she was subjected to sexual harassment and retaliatory harassment by her supervisor, with the assistance or acquiescence of the county officials .  Morris sued the defendants under Title VII, 42 U.S.C. § 1983, and the Kentucky Civil Rights Act ("KCRA").  We hold that the district court properly granted summary judgment on Morris's Title VII and KCRA sexual harassment claims, as well as all her § 1983 claims.  However, we reverse and remand the district court's grant of summary judgment on Morris's Title VII retaliation claims against the County and her KCRA retaliation claims against the County and Likins.

that the majority improperly held that Plaintiff could not proceed with her § 1983 claim against Likins and Black; coupled with my belief that the majority misapplies the standard for the tort of intentional infliction of emotional distress under Kentucky law in concluding that Likins' conduct does not meet the threshold level of outrageousness, I respectfully dissent. Plaintiff should be allowed to proceed with these claims along with her claim for retaliatory harassment where genuine issues of material fact remain for trial.

---

defense of qualified immunity.

# I

Plaintiff-appellant Judy Morris has been employed by the Oldham County (KY) Road Department since 1984, essentially providing clerical and secretarial duties to the Department. In October 1994, defendant-appellee Brent Likins was appointed the new County Road Engineer, and had supervisory authority over plaintiff. According to Morris, Likins frequently told jokes with sexual overtones, once referred to plaintiff as "Hot Lips," and several times made comments about Morris's state of dress.

Likins's first evaluation of Morris's work performance occurred in November 1994; he gave Morris a rating of "excellent." In March 1995, Likins rated Morris's performance as "very good," stating that she was a "very efficient and courteous employee." Upon receiving her evaluation, Morris asked Likins, in front of another one of her supervisors, Jim Lentz, why her rating had declined from "excellent" to "very good." According to Morris, Likins responded by telling her

> that I could come into his office and then after we were finished he would mark me excellents [sic] and then we would go from there. And I told him if that is what it took, that he could take his paper and he could have the job because I was not going to tolerate it.

Morris and Lentz both construed this remark as meaning that if Morris performed sexual favors for Likins, Likins would improve her evaluation rating.

Morris complained about these incidents to defendant-appellee County Judge John Black. Black wrote a letter to Likins concerning Likins's alleged behavior, telling Likins that he hoped the two would "work out any problems and differences in which you have [sic]." After receiving this letter, Likins allegedly began giving Morris the "cold shoulder" and became overly critical of her work. After further complaints by Morris, Black transferred Likins's

office location from the Road Department to the County Courthouse, out of concern "about everyone's working environment." Black also ordered Likins not to communicate directly with Morris, and not to be around her without a third person present.

Despite Black's directive, Likins allegedly visited the Road Department unaccompanied a total of fifteen times, and called Morris on the telephone over thirty times. Morris believes these calls were made solely for the purpose of harassing her. Additionally, Likins allegedly drove to the Road Department on several occasions, and simply sat in his truck outside the Department building, looking in Morris's window and making faces at her. He also allegedly followed Morris home from work one day, pulled his vehicle up beside her mailbox, and gave her "the finger." Morris also claims that Likins destroyed the television Morris occasionally watched at the Road Department, and threw roofing nails onto her home driveway on several occasions. This behavior by Likins allegedly caused plaintiff to start having anxiety attacks; she left work on sick leave. Morris later briefly returned to work, but left work again in May 1996. At the time the district court rendered its decision on defendants' motions for summary judgment, the county was continuing to hold her job open for her.

On February 14, 1996, Morris sued the County, Black, and Likins, alleging (1) unlawful employment discrimination by reason of sex (*quid pro quo* and hostile environment sexual harassment) and retaliation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981A *et seq.*, and the Kentucky Civil Rights Act, KY. REV. STAT. 344.010 *et seq.*; and (2) intentional infliction of emotional distress. On September 9, 1997, Morris amended her complaint by further alleging that defendants Black and Likins had denied Morris her right to equal protection, in violation of 42 U.S.C. § 1983.

unkind words and minor indignities," inasmuch as the action lies only for conduct which is truly "outrageous and intolerable," clearly Plaintiff has presented sufficient evidence to create an issue of fact as to whether this Likins' conduct rises to the level of "outrageousness." *See Kroger Co. v. Willgruber,* 920 S.W.2d 61, 65 (Ky. 1996).

In *Willgruber,* the plaintiff filed a claim for intentional infliction of emotional distress against his former employer in relation to the plaintiff's termination. 920 S.W.2d at 62-63. The Kentucky Supreme Court found that "the jury had a right to conclude that [the defendant's actions constituted] a plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring Willgruber to his knees. Conduct such as this constitutes the very essence of the tort of outrage." *Id.* at 67. Likewise, in the case at hand, Likins' actions -- such as deliberately harassing Plaintiff so as to interfere with her job performance, destroying property which Plaintiff used on the job, making an obscene gesture at Plaintiff, and throwing roofing nails on her home driveway -- could be construed as intentionally creating an environment so intolerable that Plaintiff could no longer continue her employment out of physical and emotional fear. Therefore, I believe that a jury has a right to decide whether these actions rise to the level of outrageous behavior so as to allow Plaintiff to recover damages for her alleged resulting severe emotional distress.

**D.  Conclusion**

Because I believe that the majority fails to follow binding precedent from this Circuit in holding that Plaintiff cannot go forward with her claim against the County for sexual harassment under Title VII and against the County, Likins, and Black under the KCRA[2], and because I therefore believe

---

[2]Unlike Plaintiff's claim for retaliation brought against Black under the KCRA, because the law regarding sexual harassment was established at the time Plaintiff brought her claim, Black was not entitled to the

## C.   Intentional Infliction of Emotional Distress Claim

I also disagree with the majority's holding that Plaintiff cannot go forward with her claim for intentional infliction of emotional distress against Likins under Kentucky law. Although I agree that Plaintiff's claims against the County and Black for this tort fail as a matter of law inasmuch as Plaintiff cannot show that the actions of the County and Black rises to the requisite level of extreme and outrageous conduct, I believe that her claim against Likins presents a different scenario.

The majority accurately states that Kentucky recognizes a claim for intentional infliction of emotional distress when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . ." *Craft v. Rice,* 671 S.W.2d 247, 251 (Ky. 1984). However, the majority inaccurately applies this standard to the facts of this case.

Likins' conduct against Plaintiff was not only intentional, it clearly was outrageous enough to allow Plaintiff's claim to survive summary judgment. For example, Likins 1) told several "dirty" jokes in Plaintiff's presence; 2) made a verbal advance toward Plaintiff insinuating that she could improve her performance evaluation if she had a sexual encounter with him; 3) referred to Plaintiff on one occasion as "hot lips"; 4) made comments about Plaintiffs's state of dress; 5) visited the Road Department unaccompanied a total of fifteen times and called Plaintiff on the telephone over thirty times solely for the purpose of harassing Plaintiff; 6) destroyed the television that Plaintiff occasionally watched at the Road Department; 7) stared at Plaintiff and made faces at her through the window where she worked; 8) followed Plaintiff home from work one day, pulled his vehicle up beside Plaintiff's mailbox, and gave her "the finger"; and 9) threw roofing nails onto Plaintiff's home driveway on several occasions. Although it is true that the Kentucky Supreme Court has stated that an action for outrage will not lie for "petty insults,

Defendants moved for summary judgment. On November 13, 1997, the district court granted defendant's motion for summary judgment on all claims except Morris's § 1983 claims against Black and Likins. The court held, *inter alia,* that because Morris had not been subjected to any adverse employment action by defendants, her retaliation claim was without merit. It also held that Black and Likins could not be held individually liable under the Kentucky Civil Rights Act. Black and Likins each then moved for summary judgment with respect to the outstanding § 1983 claims, and the court granted summary judgment on these claims for Black on April 30, 1998, and for Likins on July 21, 1998.

Morris now appeals.

## II

The district court granted summary judgment to defendants. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In this respect, the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim, but need only show that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Once the moving party has met its burden of production, the nonmoving party must by deposition, answers to interrogatories, and admissions on file show specific facts that reveal a genuine issue for trial. *Id.* at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, we must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one sided that one party must prevail as a matter of law." *Id.* at 251-52.

## A.   Title VII claims against the County[1]

After the district court rendered its opinion in the instant action, the Supreme Court decided *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998), which substantially altered the principles to be applied in sexual harassment cases in which a supervisor is alleged to be the guilty party.  The holding of the companion cases is the same:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.  When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* FED. R. CIV. PROC. 8(c).  The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise.  While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy

---

[1]It should be noted that Likins and Black cannot be held individually liable under either Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, or the Civil Rights Act of 1991, 42 U.S.C. § 1981A *et seq.*  In *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997), we stated, "[A]n individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."

claimed by the majority -- provides an indicia of discriminatory animus "based on sex," inasmuch as the harassing conduct in question began after Plaintiff refused Likins' sexual advance.

Accordingly, because I believe that the majority impermissibly divorces and segregates Likins' post-transfer conduct from the four alleged acts which are of an explicitly sexual nature so as to prevent Plaintiff from going forward with her claim for sexual harassment under Title VII, I must dissent.  The majority's decision rests upon an abdication from the controlling precedent in this Circuit which requires a reviewing court to consider a Title VII plaintiff's hostile work environment claim under the totality of the circumstances, and expressly provides that in order for conduct to be considered "because of sex," the conduct need not be sexual in nature.  *See Williams,* 187 F.3d at 562-65.

## B.   Section 1983 Claim for Violation of Rights Guaranteed by the Equal Protection Clause of the Fourteenth Amendment

The majority holds that because Plaintiff's claim of sexual harassment fails as a matter of law, her § 1983 claim against Black and Likins for violation of her rights guaranteed under the equal protection clause of the Fourteenth Amendment fails as well.  However, as stated, I believe that the majority erred in holding that Plaintiff could not go forward with her sexual harassment claim under the KCRA against Likins and Black inasmuch as the majority's conclusion is contrary to controlling law in this Circuit.  Because I believe that Plaintiff should be allowed to go forward with her claim for sexual harassment against Likins and Black, I therefore believe that she should be allowed to go forward with her § 1983 claim against these Defendants as well.  *See Grano v. Department of Dev.,* 637 F.2d 1073, 1082 (6th Cir. 1980).

motivating force behind his harassing post-transfer conduct. Again, *Williams* expressly holds that incidents of non-sexual abuse should be considered in a sex harassment claim where the motivating factor behind the abuse is sexual. *See* 187 F.3d at 565-66. The fact that the post-transfer events may also be considered retaliatory in nature is of no moment to the fact that Likins' harassment was motivated by Plaintiff's rejection of Likins' sexual advance. I believe that this is particularly so at the summary stage of these proceedings where a factual issue remains for the jury as to whether Likins' post-transfer conduct against Plaintiff would have occurred "but for Plaintiff's sex." *See Williams,* 187 F.3d at 565 (citing *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir. 1982)).

Furthermore, the case upon which the majority relies in support of its position was decided pre-*Williams* and, in any event, is distinguishable. Specifically, the majority relies upon *Barnett v. Department of Veterans Affairs,* in support of its position that Likins' conduct at issue could not be used to support Plaintiff's claim of sex discrimination inasmuch as the conduct was not "because of Plaintiff's sex." However, in *Barnett*, unlike in the case at hand, the only evidence presented by the plaintiff to support her claim for sexual harassment was that her supervisor had made it known that he disliked the plaintiff and had used her as the butt of office jokes. *See* 153 F.3d 338, 342-43 (6th Cir. 1998). Notably, although the *Barnett* Court found that the plaintiff's allegations amounted to personal dislike as opposed to discriminatory animus, the Court specifically qualified its holding by stating that "[w]hile, under other circumstances, proof of personal conflict may provide some indicia of discriminatory animus, such is not the case here." *Id.* at 343. Therefore, even the *Barnett* Court recognized that in order for alleged harassing conduct to be "because of sex" it need not be sexually explicit, and that incidents of "personal conflict" may be sufficient to create an inference of discrimination. The facts of the instant case are indicative of those "other circumstances" where proof of "personal conflict" -- as

suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Ellerth*, 118 S. Ct. at 2270, *see also Faragher*, 118 S. Ct. at 2293. The Court further explained in *Ellerth* that for an actionable hostile environment created by a supervisor preceding an "employment decision to be actionable, however, the conduct must be severe or pervasive." 118 S. Ct. at 2264.

**1. Did the supervisor's harassment culminate in a tangible employment action?**

Morris first argues that she was subject to a tangible adverse employment action by refusing Likins's sexual demands,[2] in that she received a "very good" evaluation rather than an "excellent" evaluation. "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a

---

[2]This claim, pre-*Ellerth*, would have been called a *quid pro quo* sexual harassment claim by most courts. However, the Supreme Court stated in *Ellerth* that "[t]he terms *quid pro quo* and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility." 118 S. Ct. at 2264.

change in the terms and conditions of employment that is actionable under Title VII." *Ellerth*, 118 S. Ct. at 2265. It does not necessarily follow that a "downgraded" evaluation culminates in a tangible employment action, which the *Ellerth* court defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2268. At a minimum, the plaintiff must point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation. *See Smart v. Ball State Univ.*, 89 F.3d 437, 442-43 (7th Cir. 1996) (holding that negative performance evaluations alone cannot constitute an adverse employment action); *Parrish v. Ford Motor Co.*, No. 89-6290, 1990 WL 109188 at *6 (6th Cir. Aug 2, 1990) (indicating that the evaluation must have an "adverse impact" on the plaintiff).

It is clear that, in this case, plaintiff suffered no tangible employment action as a result of her "very good" recommendation. She does not allege that she was unfairly denied a promotion as a result of Likins's actions. Her job remained open at the time the district court rendered its decision, and she was, at the time, free to return to it. Morris could perhaps argue that the presence of the evaluation in her personnel file[3] would constitute a tangible employment action, as the Eighth Circuit has held that the "papering" of a personnel file with negative reports can constitute such an employment action. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997). However, Likins's evaluation of Morris constituted nothing close to the "papering" of her personnel file, and, moreover, his evaluation was in no way

---

[3]The record appears to be silent on the question of whether the "very good" evaluation remains in Morris's file.

*Williams,* 187 F.3d at 565.

Therefore, based upon the state of the law as it exists today, it is clear that the majority's analysis falls short when it declines to include Likins' conduct such as his post-transfer visits to Plaintiff at the Road Department, phone calls to Plaintiff, and other allegedly harassing behavior directed at Plaintiff, into the hostile work environment equation. As such, the majority's legal conclusion that to consider the other acts would be a "mistake" is erroneous.

Contrary to the majority's assertions, Plaintiff *does* claim that these alleged post-transfer incidents of harassment were "because of sex" inasmuch as she relates them to the other four incidents of an explicitly sexual nature -- particularly the incident where she declined Likins' sexual advance; and there *is* sufficient evidence on the record to suggest that Likins' alleged post-transfer conduct was committed "because of sex" -- particularly at the summary judgment stage of the proceedings where the acts in question were not committed by Likins until after Plaintiff refused his sexual advance and where the record is void of Likins treating any male co-worker in this fashion. *See Williams,* 187 F.3d 565-66 (holding that "[t]he myriad of instances in which Williams was ostracized, when others were not, combined with the gender-specific epithets used, such as 'slut' and 'fucking women,' create an inference, sufficient to survive summary judgment, that her gender was the motivating impulse for her co-workers' behavior[,] . . . [and that] non-sexual abuse can undermine competency as much as explicitly sexual harassing behavior").

The majority's claim that *Williams* is inapplicable because Likins' post-transfer acts were "quite distinct, and separated by explicit intimations of retaliation, not sex discrimination," flies in the face of the holding and spirit of *Williams. See Ante* at n.7. Simply put, *Williams* is indistinguishable. Likins' harassing conduct against Plaintiff began when she declined Likins' sexual advance, thereby providing the

significantly to the hostile environment." *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 905 (1st Cir. 1988). To establish that the harm was "based on her sex," Williams "must show that but for the fact of her sex, she would not have been the object of harassment." *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir. 1982).

Thus, harassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus against women satisfies the "based on sex" requirement. *See, e.g., Andrews v. City of Philadelphia,* 895 F.2d 1469, 1485 (3d Cir. 1990) ("[T]he offensive conduct is not necessarily required to include sexual overtones in every instance."); *Lipsett,* 864 F.2d at 905 ("[verbal attack,] although not explicitly sexual, was nonetheless charged with anti-female animus, and therefore could be found to have contributed significantly to the hostile environment."); *Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1014 (8th Cir. 1988) ("Intimidation and hostility toward women because they are women can obviously result from conduct other than sexual advances."); *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1451 (10th Cir. 1987) (rejecting narrow definition of sexual harassment that requires predicate acts to be clearly sexual in nature); *McKinney v. Dole,* 765 F.2d 1129, 1138 (D.C. Cir. 1985) ("We have never held that sexual harassment or other unequal treatment of an employee or gourp of employees that occurs because of the sex of the employee must, to be illegal under Title VII, take the form of sexual advances or of other incidents with clearly sexual overtones. And we decline to do so now."). *Cf. Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1273 (7th Cir. 1991) ("Even though the physical threat by Art was not specifically racial in nature, it may be considered as a predicate act in establishing racial harassment in a hostile work environment, because it would have occurred but for the fact that Daniels was black.").

negative; Morris was rated "very good."[4] It is difficult to believe that Morris stands in danger of being fired, demoted, or transferred because her supervisor felt she was a "very good" secretary. Thus, as a matter of law, Likins's harassment of Morris did not result in a tangible employment action being taken against her.

**2. Was the supervisor's harassment severe or pervasive?**

Because plaintiff suffered no tangible employment action as a result of her "very good" evaluation, she must establish that she was subjected to severe or pervasive sexually harassing conduct by Likins.[5] The Supreme Court explained in the recent case of *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S. Ct. 998 (1998), that "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.' We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id.* at 1002. The *Oncale* Court went on to observe that

[t]he prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the

---

[4] Morris has introduced no evidence remotely showing that a "very good" evaluation was, at the Road Department, a negative evaluation (*e.g.*, everyone else at the Department regularly received "excellent" recommendations). In fact, Likins's evaluation of Morris indicated that she was a "very efficient and courteous employee."

[5] This claim, pre-*Ellerth*, would have been called a hostile environment sexual harassment claim by most courts. However, the Supreme Court stated in *Ellerth* that "[t]he terms *quid pro quo* and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility." 118 S. Ct. at 2264.

workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview."

118 S. Ct. at 1003 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 118 S. Ct. at 2283 (internal citations omitted). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

We hold that, under these facts, Morris cannot establish that she was subjected to a hostile working environment. The sum total of Likins's actions that can be considered "because of sex" are: (1) several dirty jokes he told in plaintiff's presence; (2) his alleged verbal sexual advance related to plaintiff's evaluation; (3) his one-time reference to plaintiff as "Hot Lips"; and (4) his isolated comments about plaintiff's state of dress. Although Likins's purported sexual advance was truly offensive, it was the only advance that Likins allegedly made. Most of Likins's jokes were not aimed at the plaintiff, and that fact can be relied upon as part of a court's conclusion that a defendant's conduct was not severe enough to create an objectively hostile environment. *See Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir.), *cert. denied*, 118 S. Ct. 172 (1997). Likins's behavior seems to have consisted of the kind of simple teasing, offhand comments, and isolated incidents that *Faragher* made clear did not amount to discriminatory

Indeed, the litany of severe harassing incidents began when Plaintiff refused Likins' sexual advance, and I believe that the jury should be able to decide whether Likins' conduct after Plaintiff rejected him sexually was "because of sex;" the majority's conclusion otherwise is in complete contravention of the state of the law as it exists today. *See Williams v. General Motors Corp.*, 187 F.3d 553, 564-65 (6th Cir. 1999) (collecting cases).

The majority's decision to view these other acts as somehow divorced from the four express acts of a sexual nature is precisely the type of flawed legal analysis the *Williams* Court rejected. Specifically, in *Williams*, this Court found that the district court had improperly "disaggregated the [sexual harassment] plaintiff's claims, contrary to the Supreme Court's 'totality of circumstances' directives, which robbed the incidents of their cumulative effect . . . [and] improperly concluded that the conduct alleged to have created a hostile work environment must be explicitly sexual." 187 F.3d at 561-62 (footnote omitted). The *Williams* Court further criticized the district court because it "misconstrue[d] the 'based on sex' requirement of a hostile-work-environment claim and, in doing so, too narrowly construe[d] what type of conduct can constitute sexual harassment." *Id.* at 564. The Court went on to expressly hold "that the conduct underlying a sexual harassment claim need not be overtly sexual in nature. Any unequal treatment of an employee that would not occur but for the employee's gender may, if sufficiently severe or pervasive under the *Harris* standard, constitute a hostile environment in violation of Title VII." *Id.* at 565; *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).

The *Williams* Court opined as follows regarding the proper analytical approach for a claim of sexual harassment under Title VII, as adopted by our sister circuits:

[T]he law recognizes that non-sexual conduct may be illegally sex-based where it evinces "anti-female animus, and therefore could be found to have contributed

Road Department and telephone calls to Plaintiff; sitting in his truck outside of the Road Department and making faces at Plaintiff; following Plaintiff home, pulling his vehicle up beside her mailbox, and giving Plaintiff "the finger"; destroying the televison set that Plaintiff occasionally watched at the Road Department; and throwing roofing nails onto her home driveway on several occasions -- should be considered as evidence to support her sexual harassment claim.

The majority maintains that to accept Plaintiff's contention "would be a mistake, as Morris does not claim that Likins acted this way 'because of sex.'" The majority equates Likins' actions with personal animus and belligerence toward Plaintiff, but not sexual harassment under Title VII, and therefore concludes that the other incidents upon which Plaintiff relies cannot be used to show that she suffered a change in the terms or conditions of employment "because of her sex." I disagree with the majority's position which takes a narrow view of the evidence and applies a literal interpretation of the phrase "because of sex," in contravention to the Supreme Court's directive that in a claim for sex discrimination brought under Title VII, the evidence should be "judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S. Ct. 998, 1003 (1998). As the Supreme Court stated in *Oncale*, "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* at 1003.

Here, I agree that Likins' conduct such as placing roofing nails on Plaintiff's driveway; following her home, pulling his vehicle beside her mailbox and giving her "the finger;" and starring at Plaintiff through her window at work while making faces at her, was done in retaliation against Plaintiff. However, I disagree that Likins was retaliating against Plaintiff solely because she complained to Judge Black.

changes in the terms and conditions of a plaintiff's employment.

Plaintiff argues that we should include Likins's alleged "retaliatory conduct" (*i.e.*, his alleged post-transfer visits at the Road Department, phone calls to plaintiff, and other allegedly harassing behavior directed at plaintiff) into the hostile working environment equation. To do so would be a mistake, as Morris does not claim that Likins acted this way "because of sex." There is no evidence in the record to suggest that any of Likins's alleged offensive post-transfer conduct was committed "because of sex." Rather, it seems to have been motivated entirely by his personal displeasure toward plaintiff and the complaints she made to Black.[6] As we recently observed, "[P]ersonal conflict does not equate with discriminatory animus." *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 342-43 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 875 (1999) (upholding a district court's determination that witness's statements describing how supervisor made it known that "he disliked the plaintiff and used her as the butt of office jokes, are consistent with personal dislike rather than discriminatory animus"). Morris cannot establish that Likins's post-transfer conduct was discrimination "because of sex" rather than simple belligerence, *see Richmond-Hopes v. City of Cleveland*, No. 97-3595, 1998 WL 808222 at *5 (6th Cir. Nov. 16, 1998), and therefore this alleged harassing conduct, which was in no way sexual, is not actionable as *sexual* harassment under Title VII.[7]

---

[6]However, Likins's conduct may very well constitute retaliatory harassment, an issue we address *infra* at 12-16.

[7]*Williams v. General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999), adds no support to the claim for sexual discrimination, as opposed to the retaliation claim. In *Williams*, all of the events at issue took place within the same context of actions by supervisors and co-workers in the workplace environment, and could appropriately be compared with actions toward workers of a different gender to assess discrimination. *See*

### 3.    Retaliatory harassment

Morris also argues that she was unlawfully retaliated against for notifying Black of Likins's alleged harassment. This circuit has not definitively answered the question of whether retaliatory harassment by a supervisor can be actionable in a Title VII case.

The Second and Tenth Circuits have both recently held that an employer can be liable for *co-workers'* retaliatory harassment.[8] *See Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 446 (2nd Cir. 1999) ("an employer [can] be held accountable for allowing retaliatory co-worker harassment to occur if it knows about that harassment but fails to act to stop it"); *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998). *See also Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996) ("Nothing indicates why a different form of retaliation — namely, retaliating against a complainant by permitting her fellow employees to punish her for invoking her rights under Title VII — does not fall within the statute."). However, no circuit court has so far addressed, in the wake of *Ellerth* and *Faragher*, whether retaliatory harassment by a *supervisor* can be actionable in a Title VII case. We today hold that it can.

The basis for our decision lies in a common rule of statutory construction: namely, that "[a] term appearing in

---

*Williams*, 187 F.3d at 558-59. In this case, the incidents alleged after Judge Black's order transferring Likins away from Morris are quite distinct, and are separated by explicit intimations of retaliation, not sex discrimination. In addition, there is no allegation that, for example, Likins viewed with equanimity complaints lodged against him by a male, while retaliating savagely in the case of a female complainant. Were such circumstances to exist, the *Williams* "aggregation" analysis might appropriately be applied, but there are no such allegations or record support in this case.

[8]We today take no position on whether an employer can be liable for co-workers' retaliatory harassment.

---

## CONCURRING IN PART, DISSENTING IN PART

---

CLAY, Circuit Judge, concurring in part and dissenting in part. I concur in the majority's decision to reverse the district court's order granting summary judgment to Plaintiff on her Title VII retaliation claim against the County, as well as her Kentucky Civil Rights Act ("KCRA") retaliation claim against the County and Likins. However, because I believe that questions of fact remain for trial regarding Plaintiff's sexual harassment claim brought under Title VII against the County; her sexual harassment claim brought under KCRA against the County, Likins, and Black; her § 1983 claim against Likins and Black for violation of her equal protection rights; as well as her state law claim for intentional infliction of emotional distress against Likins, I respectfully dissent from the majority's decision to affirm the district court's grant of summary judgment to Defendants on these claims.

### A.    Title VII Sexual Harassment Claim Against County[1]

The majority holds that Plaintiff's claim for sexual harassment fails as a matter of law inasmuch as Likins' conduct toward Plaintiff that can be considered "because of sex" amounted to four incidents -- "(1) several dirty jokes he told in plaintiff's presence; (2) his alleged verbal sexual advance related to plaintiff's evaluation; (3) his one-time reference to plaintiff as 'hot lips'; and (4) his isolated comments about plaintiff's state of dress[ ]" -- which did not amount to discriminatory changes in the terms and conditions of Plaintiff's employment. In so holding, the majority declines to accept Plaintiff's contention that Likins' other acts against her -- such as his alleged post-transfer visits at the

---

[1]I will consider Plaintiff's claim for sexual harassment against the County, Likins and Black brought under the KCRA in tandem with this issue.

discovering an obscenity written on his truck windshield, and (3) discovering that a picture of his daughter he kept at work was defaced).

## III

The district court's grant of summary judgment is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994). The Supreme Court has made it clear that severe or pervasive harassment by a supervisor based on an individual's sex can constitute "discrimination" under 42 U.S.C. § 2000e-2(a)(1), which forbids an employer "to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . sex." *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 2264 (1998). It naturally follows that, under *Ellerth*, severe or pervasive supervisor harassment that is engaged in because an individual "has opposed any practice made an unlawful employment practice by" Title VII also can constitute "discrimination" under 42 U.S.C. § 2000e-3(a). Section § 2000e-3(a) forbids

> an employer to *discriminate* against any of his employees . . . *because [the employee] has opposed any practice made an unlawful employment practice by this subchapter*, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (emphasis added).

However, just as an employer has the opportunity to prove an affirmative defense to severe or pervasive sexual harassment by a supervisor, it follows that an employer should also have the opportunity to prove an affirmative defense to severe or pervasive *retaliatory* harassment by a supervisor. Under agency principles, retaliatory harassment does not, in and of itself, constitute a "tangible employment action." *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 2293 (1998) ("No affirmative defense is available, however, when the supervisor's harassment *culminates in a tangible employment action*, such as discharge, demotion, or undesirable reassignment.")

(emphasis added).  Therefore, an employer is entitled to the same affirmative defense for retaliatory harassment that it is entitled to for sexual harassment, since "when no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . ."  *Ellerth*, 118 S. Ct. at 2270.  This defense

> comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any [] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise.  While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense.  And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Ellerth*, 118 S. Ct. at 2270.

In sum, we today modify our standard for proving a *prima facie* case of Title VII retaliation.  A plaintiff must now prove that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, *or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor*; and (4) there was a causal connection between the protected activity and the adverse employment action *or harassment*.  *See Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th

did not intend this violation to be the basis of a § 1983 claim.").  Congress chose to limit Title VII liability to employers only, and Morris cannot use § 1983 to circumvent Congress's intention.

### D.   Intentional infliction of emotional distress claims

Lastly, Morris claims that the district court improperly granted summary judgment on her state intentional infliction of emotional distress claims.  Under Kentucky law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability."  *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984).  The elements of proof necessary to sustain a claim of outrageous conduct are: (1) intentional or reckless conduct on the part of the wrongdoer; (2) outrageous and intolerable conduct in that it offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe.  *See Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990).  Kentucky law requires that the conduct in question must be "a deviation from all reasonable bounds of decency and . . . utterly intolerable in a civilized community."  *Id.* at 3 (citation omitted).  The conduct of the County and Black clearly did not meet this very high threshold.  Additionally, although Likins's alleged conduct was truly offensive, it also did not rise to the level of outrageousness necessary for recovery under Kentucky law.  *See, e.g., Allen v. Clemons*, 920 S.W.2d 884 (Ky. App. 1996) (threshold level of outrageousness not met where defendant erected billboard in his yard stating "Danger—Child Molester in the Community," after plaintiff was convicted of sexual abuse); *Humphress v. United Parcel Service, Inc.*, No. 97-6409, 1998 WL 869985 (6th Cir. Nov. 30, 1998), *cert. denied*, 119 S. Ct. 1576 (1999) (threshold level of outrageousness not met where a man, after filing a labor grievance, was subjected to a "campaign of harassment" by his co-workers which included (1) finding grease placed on various parts of his work truck where it did not belong, (2)

responding inadequately to Morris's complaints. *See Wu v. Thomas*, 996 F.2d 271, 274 (11th Cir. 1993), *cert. denied*, 511 U.S. 1033 (1994) ("a reasonable employer could not have known for certain whether acts short of firing, demoting, or refusing to hire an employee could violate Title VII"). The language of the KCRA generally tracks the language of Title VII and, thus, "should be interpreted consonant with federal interpretation." *Meyers*, 840 S.W.2d at 820. Therefore, Black could not have violated *clearly established* statutory rights under the KCRA, either. Because Black is entitled the defense of qualified immunity under Kentucky law, we affirm the grant of summary judgment on Morris's state law retaliation claims against Black.

## C.  § 1983 claims

The district court also granted summary judgment to Black and Likins on Morris's claims brought under 42 U.S.C. § 1983. The showing a plaintiff must make to recover on an employment discrimination claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983. *See Risinger v. Ohio Bureau of Workers' Compensation*, 883 F.2d 475, 483-84 (6th Cir. 1989). Since we have affirmed the dismissal of Morris's sexual harassment claims under Title VII, her analogous § 1983 sexual harassment claims were therefore properly dismissed. Additionally, even though we have reversed and remanded Morris's retaliation claims, the district court's grant of summary judgment on her analogous § 1983 retaliation claims was also proper. Whatever the scope or source of a constitutional claim of improper retaliation in other circumstances, where the plaintiff asserts that she has been retaliated against for filing a complaint under Title VII, her sole federal remedy is the cause of action provided for under Title VII. *See Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204-05 (6th Cir. 1984) ("Here the district court found that the defendants did not discriminate against the plaintiff. The only wrongful act was their retaliation for the plaintiff's actions, a violation of Title VII. We conclude that Congress

Cir.), *cert. denied*, 498 U.S. 984 (1990) (outlining previous standard for *prima facie* Title VII retaliatory harassment case). If and when a plaintiff has established a *prima facie* case, the burden of production of evidence shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *Ibid.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate "that the proffered reason was not the true reason for the employment decision." *Ibid.* (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). The employer may also prove an affirmative defense to retaliatory harassment by a supervisor by demonstrating: "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise." *Ellerth*, 118 S. Ct. at 2270.

Applying this new standard to the instant case, we first hold that a reasonable juror could conclude that Likins's behavior after the lodging of Morris's complaint constituted severe or pervasive retaliatory harassment. Assuming plaintiff's version of the facts, Likins (1) visited the Road Department unaccompanied a total of fifteen times, and called Morris on the telephone over thirty times, despite Black's warnings, solely for the purpose of harassing Morris; (2) drove to the Road Department on several occasions, and simply sat in his truck outside the Department building, looking in Morris's window and making faces at her; (3) followed Morris home from work one day, pulled his vehicle up beside her mailbox, and gave her "the finger"; (4) destroyed the television Morris occasionally watched at the Road Department; and (5) threw roofing nails onto her home driveway on several occasions. This behavior clearly constitutes more than simple teasing, offhand comments, and isolated incidents that *Faragher* indicated did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment. Thus, we

must remand this case to the district court for further proceedings. There, the County will have the opportunity to prove the affirmative defense outlined in *Ellerth*.

## B. State law sexual harassment claims

Morris sued the County, Black, and Likins under the Kentucky Civil Rights Act ("KCRA"), KY. REV. STAT. 344.010 *et seq.* The language of the KCRA generally tracks the language of Title VII and, thus, "should be interpreted consonant with federal interpretation." *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 820 (Ky. 1992). Therefore, since plaintiff's Title VII sexual harassment claims against the County were properly dismissed, her state law sexual harassment claims were properly dismissed as well. However, since we reverse the grant of summary judgment on Morris's Title VII retaliation claim against the County, we also reverse the grant of summary judgment on Morris's state law retaliation claim against the County. Since the KCRA should be interpreted consonant with federal interpretation, the County will have the opportunity to prove the affirmative defense outlined in *Ellerth* to shield it from liability against the state law retaliation claim as well.

The district court granted summary judgment for Black and Likins on Morris's state law claims because it believed that Black and Likins could not be held individually liable under the Kentucky Civil Rights Act. Plaintiff argues that KY. REV. STAT. § 344.280 permits the imposition of individual liability on Black and Likins. The statute reads:

It shall be an unlawful practice *for a person, or for two (2) or more persons to conspire*:

(1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter . . . .

(Emphasis added).

This court has held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under . . . KRS Chapter 344," because the KCRA "mirrors Title VII . . . ." *See Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Though this statement from *Wathen* is generally true, it clearly does not apply to retaliation claims brought under KY. REV. STAT. § 344.280. This section does not "mirror" 42 U.S.C. § 2000e-3(a), the analogous retaliation provision of Title VII, which forbids retaliation by "an employer." Rather, § 344.280 forbids retaliation by "a person." The Kentucky retaliation statute plainly permits the imposition of liability on individuals. Therefore, the district court's holding that Black and Likins could not be held individually liable under the Kentucky Civil Rights Act was incorrect. For this reason, we reverse the grant of summary judgment on Morris's state law retaliation claims against Likins.

However, we affirm the grant of summary judgment for Black on Morris's state law retaliation claims against him on qualified immunity grounds. Qualified immunity is a defense that can be invoked under Kentucky law. "[G]overnment officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In most cases, qualified immunity is sufficient to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *McCollum v. Garrett*, 880 S.W.2d 530, 534 (Ky. 1994) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (internal quotation marks omitted)). Black was performing a discretionary function when responding to Morris's complaints, and this circuit has never before said that retaliatory harassment is illegal under Title VII. Because of this, Black could not have violated *clearly established* statutory rights under Title VII by allegedly