NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0045n.06
Filed: January 19, 2005

No. 03-1798

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KRISTY L. SWANSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LIVINGSTON COUNTY, DONALD | ) | EASTERN DISTRICT OF MICHIGAN |
| HOMAN, and ROBERT BEZOTTE, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: SUHRHEINRICH and SUTTON, Circuit Judges; NIXON, District Judge.[*]

SUTTON, Circuit Judge.  Kristy Swanson challenges the district court's summary disposition of her sexual harassment, retaliation, retaliatory harassment and § 1983 claims.  Because we agree with the district court that Swanson has failed to present sufficient evidence to reach a jury on any of these claims, we affirm.

I.

The story behind this case begins in July of 2000, when Kristy Swanson, a corrections officer with the Livingston County Sheriff's Department, started a friendship with a co-worker, road patrol

_____

[*] The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

deputy Thomas Ash, that lasted until December of the same year. In the course of their friendship, Swanson attended several basketball games with Ash and accompanied Ash and other individuals on a hunting trip. The precise nature of their relationship is disputed. Swanson claims that she was never romantically or sexually involved with Ash, but that Ash became infatuated with her and communicated his feelings to her on several occasions. Ash claims that there was something more to the relationship—a claim that Swanson's complaint, which states that she was "being harassed by a road patrol deputy who was her former boyfriend," seemingly corroborates. *See* Complaint at 4.

Whatever its precise nature, the relationship turned sour in late 2000, when Swanson learned from other deputies that Ash had claimed that the two of them were romantically involved. At the same time, another deputy, Cheryl Miks, with whom Swanson lived from November of 1999 through February of 2000, told employees at the Sheriff's Department that men frequently visited Swanson at Miks' house.

In November of 2000, Swanson claims to have reported to Nancy Riley, the newly hired jail administrator, that Miks was spreading rumors about Swanson's alleged sexual promiscuity. (There is some dispute on the timing of these events: Swanson states that she raised her allegations of sexual harassment on these dates, but both her deposition and Nowacki's deposition indicate that she did not discuss the charges until May of 2001.) She also complained to her immediate supervisor, Sergeant Vicky York, about Ash's and Miks' remarks and about similar comments made

by other members of the Sheriff's Department. York relayed Swanson's complaints to Lieutenant Karen Nowacki and suggested that the Department investigate the allegations.

In response to Swanson's complaints, the Undersheriff, Robert Bezotte, ordered an internal investigation of the allegations. In accordance with this directive, Nowacki met with Swanson and interviewed several officers who allegedly had spread rumors about Swanson. Nowacki ultimately determined that Ash was not sexually harassing Swanson but nevertheless advised him to cease all contact with her. Her investigation produced counseling memos and written reprimands for several other officers. Officer Keith Hutchins, for example, received a reprimand for reportedly telling Swanson that she had a "nice ass." JA 492. Miks received a reprimand for spreading rumors about Swanson. In addition to Nowacki's investigation, Sheriff Donald Homan posted a memorandum to all members of the Department advising them that he would not tolerate any forms of sexual harassment or any retaliation against female officers who brought charges.

On December 17, 2001, Swanson filed a charge of discrimination with the EEOC. The Commission later dropped the charge when Swanson informed it that she intended to file a civil action.

In spite of the Department's corrective measures, Swanson says that she continued to be subjected to sexual harassment, and retaliation as well, all of which she reported to her superiors. She alleges, for example, that Ash continued to send unsolicited emails to her professing his love and on one occasion left an alcohol-inspired message on Swanson's cell phone requesting that they

get back together. When Swanson reported his actions, the Department ordered Ash to stay away from her but did not impose any disciplinary measures. In another incident, Officer Daniel Warford, whom Swanson identifies as Ash's best friend, ran the license plate of a pickup truck parked outside Swanson's residence through the Department's records. When the Department learned of the incident, it suspended Warford from work. In yet another incident, Swanson attended a training class given by Barnett Jones, the Sterling Heights Chief of Police, where, Swanson believes, for three hours Jones aimed his comments on sexual harassment at her. On several occasions, co-workers used obscene language to describe Swanson to others or while speaking with her. On two occasions, Swanson believes that she received harsher punishment than other employees for her violations of departmental rules, once even though (she asserts) an investigative team acquitted her of any wrongdoing. And, finally, upon hearing of Swanson's sexual harassment lawsuit, Undersheriff Bezotte reportedly commented that he would not let "Swanson [ ] screw her way into a road position." JA 440. (Swanson recounts other incidents in her brief but they are not based on gender.) Swanson eventually resigned from the Department.

On March 14, 2002, Swanson filed this action. Of relevance to this appeal, Swanson claimed (1) that the Department engaged in "hostile work environment" sex discrimination in violation of Title VII, (2) that the Department engaged in retaliation in violation of Title VII, (3) that the Department engaged in retaliatory harassment in violation of Title VII and (4) that the County had a custom and policy of sexual discrimination in violation of 42 U.S.C. § 1983.

The district court granted the Sheriff's Department summary judgment on all of Swanson's claims. *See Swanson v. Livingston County*, 270 F. Supp. 2d 887 (E.D. Mich. 2003). The court first rejected Swanson's hostile-work-environment claim. *Id.* at 893–95. At most, the court determined, the conduct was "merely offensive," *id.* at 895, pointing to circuit precedent holding that vulgar remarks and rumors may be insufficient to create an objectively hostile work environment and stressing that Swanson had not alleged any physical touching or threatening comments. *Id.* at 894–95. The Department, the court further reasoned, took prompt remedial action to quell the rumors and did not show indifference to Swanson's complaints. *Id.* at 895.

The district court next rejected Swanson's claim that the Department retaliated against her for filing an EEOC complaint by punishing her for an incident stemming from an excessive-force claim. Because the Department suspended Swanson for a violation of security regulations—entering a cell without handcuffs or a radio, *id.* at 896–97— the district court reasoned that Swanson had not overcome the Department's legitimate non-discriminatory reason for the suspension.

The district court characterized Swanson's retaliatory-harassment claim as her "strongest" but nonetheless concluded that the claim failed as a matter of law. *Id.* at 898. Even assuming the existence of a cause of action for co-worker retaliatory harassment, the court determined that Swanson had failed to show that the harassment was sufficiently severe or pervasive and had failed to show that the Department acquiesced in or condoned the retaliatory behavior. *Id.* at 898–900.

No. 03-1798
*Swanson v. Livingston Co.*

The district court, finally, rejected the § 1983 claim because Swanson did not introduce any evidence showing that Livingston County had a "policy" or "custom" of sexual harassment. *Id.* at 897–98.

## II.

We give fresh review to a district court's grant of summary judgment and draw all reasonable inferences in favor of the nonmoving party. *Allen v. Mich. Dep't of Corrections*, 165 F.3d 405, 409 (6th Cir. 1999); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A.

To establish a Title VII claim for sexual harassment, a plaintiff must show:

(1)     he or she was a member of a protected class;

(2)     he or she was subject to unwelcome harassment;

(3)     the harassment was based on sex;

(4)     the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and

(5)     the employer knew, or should have known, of the harassment and failed unreasonably to take prompt and appropriate corrective action.

*Williams v. General Motors Corp.*, 187 F.3d 553, 560–61 (6th Cir. 1999); *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997). In the context of a claim of co-worker sexual harassment, as here, a plaintiff must show that, in the face of "severe and pervasive" sexual

harassment by co-workers, *see Williams*, 123 F.3d at 560, an employer or supervisor failed to adopt adequate corrective measures or adopted a "remedy [that] exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination," *Blankenship*, 123 F.3d at 873; *cf. Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999) ("Generally, a response is adequate if it is reasonably calculated to end the harassment.").

It suffices for disposing of this claim that the Sheriff's Department promptly began an internal investigation regarding Swanson's allegations and meted out sufficiently disciplinary measures to those individuals found to have violated Department policy. Recognizing that "a harassment victim may not dictate an employer's action against a co-worker," *Blankenship*, 123 F.3d at 874, we agree with the district court that the Department responded adequately to Swanson's complaints.

### B.

A Title VII claim for retaliation requires the plaintiff to show:

(1)     he or she was engaged in activity protected by Title VII;

(2)     this exercise of protected rights was known to the defendant;

(3)     the defendant took an employment action adverse to the plaintiff; and

(4)     there was a casual connection between the protected activity and the adverse employment action.

*Equal Employment Opportunity Comm'n v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997). If, as was true here, the employer gives a "legitimate, non-discriminatory reason" for its

adverse action, the employee has the burden of showing that the explanation is pretextual. *Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.*, 783 F.2d 50, 54 (6th Cir. 1986).

Swanson has not met that burden. Swanson received a one-day suspension after an independent investigation cleared her of charges of using excessive force to restrain an inmate. She claims that she received the suspension to punish her for bringing an EEOC action. In response, the Department points out that she was suspended because of a security violation—entering the cell area without handcuffs or radio—which is a legitimate, non-discriminatory reason for the Department's action and one that Swanson fails to rebut persuasively . The court correctly rejected this claim as a matter of law.

## C.

Swanson's retaliatory harassment claim turns on similar issues and fails for a similar reason as her co-worker-sexual-harassment claim. In *Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000), we recognized a cause of action for supervisor retaliatory harassment. *See id.* at 792. Swanson does not claim that she faced retaliatory harassment by her supervisors, but that her co-workers harassed her to retaliate for the EEOC claim and that this harassment should be imputed to the Department. The *Morris* court left open the question whether an employer can be held "liable for co-workers' retaliatory harassment," *id.* at 791 n.8, and the Sixth Circuit has yet to adopt such a cause of action. *Cf. Patton v. Sears, Roebuck & Co.*, 2000 U.S. App. LEXIS 27997, at \*14 n.1 (6th Cir. Nov. 1, 2000) (unpublished opinion).

Even if we recognized co-worker retaliatory harassment as a valid cause of action, *see, e.g.*, *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) ("[A]n

employer [can] be held accountable for allowing retaliatory co-worker harassment to occur if it knows about that harassment but fails to act to stop it."), Swanson's claim would fail for precisely the same reason that her co-worker-sexual-harassment claim fails. Liability hinges on an employer's actions or an employer's failure to prevent co-worker retaliation. No evidence, in this case, indicates that the Sheriff's Department "condoned and encouraged" the co-workers' retaliatory behavior. *Farra v. General Motors Corp.*, 163 F. Supp. 2d 894, 914 (S.D. Ohio 2001).

D.

Also unavailing is Swanson's § 1983 claim alleging that the County discriminates on the basis of gender in its hiring and promotion decisions—first and foremost because she has not identified any custom, policy or practice of sexual harassment on the part of Livingston County. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). Nor has Swanson identified a single incident of alleged harassment against any individual but herself. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."); *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). In fact, Livingston County has a policy against sexual harassment and Swanson has submitted no evidence to show that the County does not enforce this policy.

III.

For these reasons, we affirm the judgment of the district court.