Sharon L. CECKITTI,
Plaintiff/Appellant,

v.

CITY OF COLUMBUS, DEPARTMENT OF PUBLIC SAFETY, DIVISION OF POLICE, Defendant/Appellee.

No. 00–3423.

United States Court of Appeals,
Sixth Circuit.

July 12, 2001.

Before MARTIN, Chief Judge; MOORE, Circuit Judge; and O'MALLEY, District Judge.*

OPINION

O'MALLEY, District Judge.

Plaintiff, Sharon Ceckitti, appeals from a grant of summary judgment to defendants, the City of Columbus, on Ceckitti's Title VII retaliation claim. Magistrate Judge Terence P. Kemp, to whose jurisdiction the parties consented, found that Ceckitti could not establish a prima facie case of retaliation because she could not show that she was subject to an adverse employment action or, "severe and pervasive retaliatory harassment." We agree that Ceckitti has failed to establish a prima facie case of retaliatory harassment and, therefore, AF-FIRM the magistrate judge's grant of summary judgment.

I.

Ceckitti, an African–American female, was a member of the Unsolved Case Review Team, otherwise known as the "Cold Case Squad," at the Columbus, Ohio Police

---

* The Honorable Kathleen McDonald O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

Department. Ceckitti attended polygraph training school along with another member of the police department, Cathy Collins, a white female. After the training sessions were completed, both women sought overtime pay for the hours spent in training. The police department denied both overtime requests. Acting Deputy Chief, Steven Gammill, also issued a department-wide memorandum opining that these requests for overtime pay were greedy.

Collins pursued her claim for overtime pay through the Federal Wage & Hour Office, and eventually settled that claim with the department for an undisclosed sum. Ceckitti, instead, pursued her claim internally where she was unsuccessful. Ultimately, on November 25, 1995, Ceckitti filed a complaint with the police department's internal EEO office asserting that the denial of her overtime request and Gammill's subsequent memorandum were the product of gender and/or race discrimination. Following an internal investigation, the City issued a "no probable cause" determination on Ceckitti's discrimination claims. Gammill, however, was disciplined for his memorandum and offered both Ceckitti and Collins written apologies. Those claims and events are not at issue in this appeal.

This appeal involves Ceckitti's claim that, following her November 25, 1995 EEO complaint, she was subjected to repeated instances of retaliation which, taken together, constitute actionable retaliatory harassment under Title VII. This claim was the subject of a second EEO complaint, filed in November 1996. Ceckitti now claims that the Magistrate Judge erred when he granted summary judgment to the City of Columbus on her retaliation claim.

Ceckitti recites a litany of events occurring after the filing of her 1995 complaint which she claims, taken together, constitute retaliatory harassment. Of these events, many were not directed exclusively or even primarily at Ceckitti and others simply can not be fairly characterized as retaliatory in nature. Those that remain, were isolated, relatively minor incidents which simply did not create a severe or pervasive retaliatory environment. To the extent appropriate, the Court will address the nature of these events in the body of this opinion.

## II.

We review *de novo* the magistrate judge's order granting summary judgment. *Avery v. King,* 110 F.3d 12, 13 (6th Cir. 1997). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). We must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must show that "(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the

plaintiff, *or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor,* and (4) there was a causal connection between the protected activity and the adverse employment action *or harassment." Morris v. Oldham Cty. Fiscal Ct.,* 201 F.3d 784, 792 (6th Cir.2000) (emphasis in original).

▄▄▄ Once the plaintiff has established a prima facie case, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* at 792–93 (*quoting McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If the defendant cannot establish a legitimate reason for its actions, the plaintiff prevails. *See Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 658 (6th Cir.2000). If the defendant can establish a legitimate reason for its actions, then the plaintiff must demonstrate, by a preponderance of the evidence, that the defendant's proffered reason was pretextual, *i.e.,* that it "was not the true reason for the employment decision." *Morris,* 201 F.3d at 793 (*quoting Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

While Ceckitti complains about certain criticism of her work, she concedes that no "adverse employment action" within the meaning of Title VII was taken against her. Ceckitti instead relies upon the second prong of the third element—that is, alleged severe or pervasive retaliatory harassment by her supervisors—in her attempt to establish a prima facie case.

▄▄▄ To establish that an employer's conduct constitutes severe or pervasive retaliatory harassment, the plaintiff must show that "the workplace is permeated with discrimination, intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment ..." *Harris v. Fork-*

*lift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). *See also Morris,* 201 F.3d at 790; *Williams v. General Motors Corp.,* 187 F.3d 553, 562 (6th Cir.1999). Evidence of whether the conduct at issue is so severe and pervasive as to create a hostile work environment "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. " '[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal citations omitted).

▄▄▄ Our assessment of whether the alleged conduct is sufficiently severe or pervasive is based on the totality of the circumstances alleged. *See Williams v. General Motors Corp.,* 187 F.3d 553, 562 (6th Cir.1999) (emphasizing totality-of-circumstances review with regard to hostile environment claim). Thus, it is not "whether each incident or harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." *Id.*

▄▄▄ Finally, we approach the question of whether the "constellation of surrounding circumstances, expectations, and relationships" formed a hostile or abusive workplace environment from both an objective and a subjective perspective. *See Williams v. General Motors Corp.,* 187 F.3d 553, 562 (6th Cir.1999); *see also Faragher,* 524 U.S. at 788, 118 S.Ct. 2275 (reaffirming the objective and subjective components of the test for a hostile work

environment). Thus, we look both to whether a reasonable person in plaintiff's position would find that the conduct at issue constitutes severe or pervasive hostile retaliation *and* whether the plaintiff subjectively perceived the employer's actions to be severe or pervasive retaliation. *See Harris,* 510 U.S. at 21, 114 S.Ct. 367. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.*

Applying these standards to Ceckitti's factual allegations, we agree with the Magistrate Judge that the conduct about which Ceckitti complains did not create a retaliatory hostile environment. We also agree, accordingly, that Ceckitti failed to make a prima facie showing on her retaliation claim sufficient to withstand entry of summary judgment in defendant's favor. Indeed, we find that careful examination of Ceckitti's complaints compels this conclusion.

■■■ First, it is clear that the bulk of Ceckitti's claims of retaliatory discipline or criticism arise out of a department inquiry into the *overall* productivity of the Cold Case Squad. Significantly, criticisms about which Ceckitti complains were directed not only to Ceckitti, but to two of the other three detectives in that unit as well. To the extent Ceckitti was "disciplined" at all, the discipline meted out to Ceckitti actually was less than that imposed on two other officers in her unit, one black female and one white male.[1] And, the added reporting requirements imposed upon Ceckitti were imposed upon all four members of the unit, including yet another white male detective. The record is clear, moreover, that allegations of a lack of pro-

ductivity in the Cold Case Squad were premised upon an objective analysis of case-closing data. Given the circumstances surrounding these department actions—that they were directed to all or most of the Cold Case Squad, regardless of race, sex or the existence of EEO complaints, and were prompted by objectively verifiable concerns with the productivity of that squad—we agree that these actions do not evidence retaliatory animus.

Ceckitti's other complaints similarly fail to satisfy her burden with respect to the third element of a prima facie case for retaliatory discrimination under Title VII. This is true both because (1) Ceckitti seriously mischaracterizes many of the events upon which she relies, and (2) the other events upon which Ceckitti relies are too infrequent, unrelated and harmless, even when combined, to create a severe or pervasively hostile work environment.

A few examples suffice to explain the first point. Ceckitti claims, for instance, that she was not allowed to leave the office one day in March 1996 and that this prohibition was retaliatory. In making this assertion, however, Ceckitti fails to acknowledge that she had placed herself on "light duty" that day for medical reasons, and that officers on "light duty" are not permitted to leave the office. Indeed, Ceckitti has conceded that she was aware of this policy when she asked to leave the office that day. Similarly, Ceckitti's claim that she was denied bereavement leave in 1996 ignores the following: (1) that the Sergeant she asked to grant her leave did not have the authority to do so because he was not her direct supervisor, (2) that the request was made months after her grandfather's death, and (3) that she did not ask for leave until the day before she wanted

---

1. Ceckitti received an oral, undocumented constructive counseling regarding her level of productivity as a member of the Cold Case Squad; her two co-workers received written, documented counseling on their performance failures.

to be absent from work, despite having been scheduled for some time to be on duty. And, it is clear that Ceckitti's assertion that she was accused of stealing is unsupported. In her own deposition, Ceckitti concedes that no one accused her of stealing and that she was never investigated or disciplined for stealing; she only suspected that other officers *may* have believed she had stolen an operating manual for a polygraph device, a suspicion that has never been confirmed.

As to the overall impact of Ceckitti's other complaints, we find that Ceckitti has failed to satisfy the standards set by this Court for hostile environment cases. As noted above, "offhand comments, and isolated incidents," do not constitute a hostile environment under Title VII. *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (internal citation omitted). Title VII was not meant to be, and Courts must ensure that it does not become a "general civility code." *See id.* at 788, 118 S.Ct. 2275 (*citing Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Proper application of Title VII to employment claims is meant to filter out complaints attacking "the ordinary tribulations of the workplace." *Id.* Just as conduct must be "extreme" to amount to a change in the terms and conditions of employment, *see id.*, it must also be extreme to constitute severe and pervasive retaliatory harassment.

To the extent Ceckitti's complaints regarding matters other than the Cold Case Squad review find any support in the record, they describe only a few isolated incidents which had no effect on Ceckitti's employment status or her ability to perform her job.[2] Essentially, Ceckitti objects to what are best characterized as "ordinary tribulations of the workplace," which are not actionable under Title VII.

Although Ceckitti may have subjectively believed she was subjected to retaliation, we do not find that a reasonable person in Ceckitti's position would believe that the actions of her supervisors were either in response to the filing of her EEO complaint or were sufficiently severe or pervasive to create a retaliatory hostile environment. For these reasons, the Magistrate Judge's grant of summary judgment to the defendants is AFFIRMED.

---

2. Ceckitti claims, for instance, that two supervisors related to other co-workers that they were going to "get rid" of her, and that one supervisor expressed concern with her possessing a firearm as part of her police duties if she was "emotionally distressed" as alleged in her complaint. Ceckitti provides no direct evidence of these statements, does not claim to have suffered any adverse employment action as a result of these statements, and indisputably remains an active (and armed) member of the police department.