NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0231n.06
Filed: March 30, 2005

No. 04-5441

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

STEVE BOURINI,

      Plaintiff-Appellant,

v.

BRIDGESTONE/FIRESTONE NORTH
AMERICAN TIRE, LLC,

      Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

_____/

Before:      MARTIN, GILMAN, and FRIEDMAN[*], Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. This case involves the appeal of the district court's grant of summary judgment for the defendant, Bridgestone/Firestone, on Steve Bourini's hostile work environment claims based on his national origin and religion, in violation of Title VII, 42 U.S.C. § 2000, et. seq., and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, et seq. For the following reasons, we **AFFIRM** the judgment of the district court.

I.

Steve Bourini, a Muslim native of Jordan, immigrated to the United States in 1989. In 1998, Bourini began to work as a tire builder at Bridgestone/Firestone's tire manufacturing plant in LaVergne, Tennessee. The claims at issue here arise out of what Bourini alleges is a pattern of

---

[*]The Honorable Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by designation.

discriminatory treatment sufficient to constitute a hostile work environment under Title VII and the Tennessee Human Rights Act. In support, Bourini points to eight alleged incidents of harassment. First, Bourini claims that within the first few months of his employment at Bridgestone/Firestone in 1998, an unnamed "set-up technician" at the plant told him: "Steve, I don't want to go outside and see your camel tied to my wheels." Bourini apparently ignored this comment and did not mention it to any supervisor. Second, Bourini alleges that in 1999 another coworker, Mike Jones, called Bourini a "camel jockey." This time Bourini complained to his supervisor, and Jones was counseled not to make any derogatory comments to Bourini. Bourini admits that Jones never made any subsequent inappropriate comments and that he and Jones "became good friends."

Third, approximately two years later, Bourini claims that on September 21, 2001, soon after the September 11 attacks, Bourini was subjected to another incident of harassment. Bourini alleges that a co-worker, Scott Sharber, attempted to back over him while reversing a forklift truck. Bourini concedes, however, that Sharber did nothing to indicate that he was aware of Bourini's presence. The incident was investigated by the company's labor relations manager, Roger Smith. Smith interviewed Sharber, who claimed that he did not try to run over Bourini. A witness to the accident, Bonnie Walden, also told Smith that she did not believe that Sharber had intentionally tried to run over Bourini. Consequently, Smith concluded that he had no basis on which to conclude that Sharber had acted intentionally, or that his actions were motivated by discriminatory animus.

Fourth, Bourini points to two statements that another co-worker, William Burkett, allegedly made over two weekend shifts on November 24-25, 2001. On November 24, Bourini apparently overheard Burkett say, "If it were up to [me], they would put [Bourini] back—put [Bourini] in a box

and send [him] back to [his] country." The next day, Burkett allegedly told Bourini, "[I]f you'd get the sand out of your ears you'll hear me better." After an investigation into the incident, during which Burkett denied saying anything to Bourini because of his national origin or religion, Smith reminded Burkett of the company's anti-harassment policy and told him that the company would not tolerate harassment. However, citing a lack of evidence to substantiate the allegations, Smith concluded that he could not discipline Burkett. Bourini transferred to a different crew on January 13, 2002.

On February 28, 2002, Bourini filed a charge with the Equal Employment Opportunity Commission, claiming that he had suffered harassment because of his national origin and religion based on these four initial claims of unfair treatment.

Bourini alleges that he was subjected to further harassment on several additional occasions after his charge was filed. In March 2002, an unknown co-worker apparently mocked Bourini's voice over the intercom system after Bourini had used the intercom to request materials for his machine. In June 2002, Bourini claims that he witnessed slurs painted on the wall of one of the plant's restroom stalls. Apparently, someone had written that the "I" in "Islam" stood for "idiots," the "s" for "shit bags," the "l" for "losers," the "a" for "assholes," and the "m" for "morons." Smith investigated the graffiti, but was unable to match the handwriting to any writing sample. Management subsequently painted over the graffiti.

After this claim was filed on November 22, 2002, two other alleged incidents of harassment occurred. In December 2002, Bourini claims that he found a pamphlet at his work station entitled "For my Muslim Friend." While Bourini did not read the pamphlet, he apparently assumed that it

was Christian proselytizing material. In February 2003, Smith sent an e-mail message to all employees at the plant advising them that some of them needed to visit the human resources department to receive information about a change in federal immigration laws. Bourini was disturbed by the message because he felt that it should have been directed to him privately.

On November 22, 2002, Bourini filed this complaint against Bridgestone/Firestone, alleging that the instances described above constituted harassment based on his national origin and religion in violation of Title VII, 42 U.S.C. § 2000, et. seq., and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, et seq. Bridgestone/Firestone moved for summary judgment on November 3, 2003, which was granted by the district court on all of Bourini's claims on March 18, 2004. The court held that two incidents—the comments made by the set-up technician in 1998 and those by Jones in 1999—were time-barred. As for the remaining incidents, the court concluded that Bourini failed to meet his burden of establishing a prima facie case of a hostile work environment. Bourini timely filed his notice of appeal of that decision on April 9, 2004.

On appeal, Bourini concedes that the district court accurately summarized the facts in the record and recited the applicable law correctly. However, Bourini claims that the court, "in ruling on both the Statute of Limitations and the significance of the eight undisputed episodes of discriminatory, harassing conduct, . . . impermissibly invaded the province of the jury." According to Bourini, the district court erred in granting summary judgment because "the parties legitimately advance differing inferences from known facts" and employer intent is at issue, thus suggesting that there are genuine issues of material fact.

III.

We review de novo the district court's award of summary judgment on Bourini's discrimination claims. *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We consider all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *Peltier*, 388 F.3d at 987.

The only issue presented in this appeal is whether the district court erred in granting Bridgestone/Firestone's motion for summary judgment on his claims under Title VII and the Tennessee Human Rights Act. As a preliminary matter, the district court dismissed, and thus did not address, two of Bourini's alleged incidents of harassment because they were time-barred. We need not consider whether the district court erred in finding these incidents time-barred because the incidents, considered along with those that occurred within the limitations period, do not constitute the grounds for a cognizable hostile work environment claim.

Under Title VII, a plaintiff establishes a prima facie case of hostile work environment based on race or religion by demonstrating the following five elements: (1) that he was a member of a protected class; (2) that he was subjected to unwelcomed racial and/or religious harassment; (3) that the harassment was based on race or religion; (4) that the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive

work environment; and (5) that the employer was liable for the harassment.[1] *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). In our view, the district court was correct to conclude that Bourini is unable to satisfy the fourth prong of this test.

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). In determining whether there was a hostile work environment, this Court looks to the totality of the circumstances. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that the victim must subjectively regard as abusive. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000). "Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "The Supreme Court has consistently held that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Newman*, 266 F.3d at 405 (quoting *Faragher*, 524 U.S. at 788).

---

[1]Because the merits of Bourini's claims under the Tennessee Human Rights Act are analyzed under the same framework that applies to Title VII claims, we do not consider those claims separately. *See Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001).

The district court concluded that Bourini did not make "a prima facie showing from which a reasonable juror could find that he suffered harassment because of his national origin or religion that was so pervasive or severe as to create a hostile work environment." We agree with that conclusion, as Bourini's allegations of discrimination are insufficient to create a genuine issue of material fact. First, the incidents were not sufficiently pervasive to establish an abusive working environment. The eight alleged incidents were spread out over a period of five years, starting in 1998 and ending in 2003. These relatively infrequent and isolated incidents are thus insufficient to constitute discriminatory changes in the terms and conditions of employment. *See, e.g., Marshall v. Fed. Express Corp.*, No. 99-6732, 12 Fed. Appx. 186, 2000 WL 1801275, at *2 (6th Cir. Nov. 30, 2000) (unpublished) (holding that a plaintiff could not establish a hostile work environment where "[t]he alleged acts of harassment were isolated incidents spread out over a four-year period").

Second, while several of the incidents were offensive and highly inappropriate, the incidents collectively do not arise to the "threatening" or "humiliating" level of severe conduct required to create an objectively hostile or abusive work environment under Title VII, especially in light of their infrequency. *Cf. Jackson v. Quanex*, 191 F.3d 647, 662 (6th Cir. 1999) (holding that a plaintiff's allegations of regular and persistent racial slurs and graffiti, physical attacks, and tampering with acid valves in area in which the plaintiff worked, were severe enough to survive summary judgment).

We also note that even if we concluded that Bourini presented sufficient evidence of a hostile work environment to survive summary judgment, Bourini is unable to satisfy the fifth prong; namely, that Bridgestone/Firestone was liable for the harassment. In order to hold an employer

directly liable in this context, the plaintiff must show "that the employer knew or should have known of the conduct, and that its response manifested indifference or unreasonableness." *Id.* at 663 (citations omitted). "Generally, a response is adequate if it is reasonably calculated to end the harassment." *Id.* (citations omitted). Here, there is no substantive evidence in the record suggesting that Bridgestone/Firestone failed to respond appropriately to the alleged discriminatory incidents. Thus, summary judgment for Bridgestone/Firestone was appropriate.

IV.

For the aforementioned reasons, we **AFFIRM** the district court's grant of summary judgment.