NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0224n.06

Case No. 14-5678

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Mar 23, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SHERRY V. SHAW, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| PATRICK R. DONAHOE, POSTMASTER | ) | THE WESTERN DISTRICT OF |
| GENERAL, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee, | ) | |
| and | ) | |
| | ) | |
| AMERICAN POSTAL WORKERS UNION | ) | |
| MEMPHIS TENNESSEE AREA LOCAL 96, | ) | |
| MTAL-96; AMERICAN POSTAL | ) | |
| WORKERS UNION AFL-CIO, | ) | |
| | ) | |
| Defendants. | ) | |

**BEFORE: SILER, GRIFFIN, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Sherry V. Shaw appeals the district court's grant of summary judgment to her now-former employer,[1] the Postmaster General of the United States Postal Service (USPS), on her retaliation claim brought under Title VII, 42 U.S.C. § 2000-3(a). Shaw alleges that USPS retaliated against her for engaging in protected activity, specifically, submitting claims to USPS's Equal Employment Opportunity office and the Equal Employment Opportunity Commission. Shaw also appeals the district court's subsequent order granting

---

[1] Shaw stated in a declaration dated June 21, 2013, that she is a retired employee of the USPS. PID 1504.

summary judgment on her remaining claim of hostile-work-environment retaliation. We

AFFIRM in all respects.

**I.**

Shaw began employment with USPS in September 1986. As of November 2007, Shaw

worked at the Memphis Airport Station as a mail-processing clerk; some of the clerks had

window duties and some, including Shaw, did not. Bertrand Tate was Station Manager and Ave

Williford was Shaw's supervisor. As pertinent here, Shaw filed three claims with the USPS

Equal Employment Opportunity office: in August 2008, claiming denial of overtime; in March

2009, claiming involuntary reassignment from the Airport Station to the Memphis Processing

and Distribution Center (PD & C); and in July 2010, claiming that she was denied the

opportunity for in-section bidding to return to the Airport Station and denied retreat rights. The

Memphis District Office of the EEOC consolidated these claims, found them without merit, and

issued a notice of final action in July 2011. PID 1389-93.

In September 2011, Shaw and a co-employee, Rochelle Johnson, proceeding pro se,

brought this action against USPS, the American Postal Workers Union Memphis Tennessee Area

Local 96, and the American Postal Workers Union AFL-CIO. Shaw had served as a union

steward and as Johnson's union representative before Shaw bid on and received the position at

the Airport Station in November 2007. Johnson is no longer a plaintiff because the district court

granted USPS's motion to sever. PID 1731 n.1, M.J. R &R. The Unions are no longer

defendants because the district court granted Shaw's unopposed motion to dismiss them with

prejudice. PID 600, 611. Shaw's case proceeded against USPS. After she filed her third

amended complaint, PID 474-94, the parties filed cross motions for summary judgment, which

were referred to a magistrate judge (MJ). PID 750, 833. Shaw sought summary judgment on all

claims; the USPS did not. The MJ's report and recommendation, to which Shaw objected, recommended granting USPS summary judgment and denying Shaw summary judgment. PID 1777. The district court adopted the MJ's recommendations and ordered the parties to show cause why it should not dismiss Shaw's remaining claims sua sponte. PID 1794-1808.

Shortly after the district court entered its order, Shaw's present counsel filed an appearance (thus Shaw no longer was pro se) and requested an extension of time to respond to the order to show cause, which was granted. PID 1809. After receiving counsel's response to the show cause order the district court sua sponte granted USPS summary judgment on Shaw's hostile-work-environment retaliation claim. PID 1837, 1852. Shaw timely appealed. PID 1853.

## II.

We review de novo the district court's grant of summary judgment. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmovant reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## <u>RETALIATION</u>

Title VII prohibits an employer from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim can be established either by direct evidence or by circumstantial evidence that would support an inference of retaliation. *Laster*, 746 F.3d at 730. Because Shaw relies on circumstantial

evidence, we analyze her claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a prima facie case Shaw must show that 1) she engaged in protected activity, 2) her exercise of protected rights was known to USPS, 3) USPS thereafter took adverse employment action against her or she was subjected to severe or pervasive retaliatory harassment by a supervisor, and 4) there was a causal connection between her protected activity and the adverse employment action or harassment. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). In contrast to Title VII's discrimination provision,[2] an adverse employment action may be established under Title VII's retaliation provision by showing "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Laster v. City of Kalamazoo*, 746 F.3d 714, 719 (6th Cir. 2014). As the *Burlington* Court observed:

> We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace . . . . The antiretaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers . . . .
>
> We refer to reactions of a *reasonable employee* because we believe that the provision's standard for judging harm must be objective.

*Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69 (emphasis in original).

---

[2] An adverse employment action under Title VII's discrimination provision, 42 U.S.C. § 2000e-2(a)(1), is a materially adverse change in the terms or conditions of employment that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Laster*, 746 F.3d at 727 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

If the employee carries her burden of establishing a prima facie case of retaliation, the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. If the employer satisfies its burden, the burden shifts back to the employee to demonstrate that the employer's proffered reason was not the true reason for the adverse employment action. *Laster*, 746 F.3d at 730. "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "require[] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 731.

The last three prima facie elements are at issue, as USPS acknowledged that Shaw had filed numerous EEO claims and had been involved in claims filed by several other USPS employees. PID 849. We address each of Shaw's claims in turn.

## 1. **Denial of Overtime**

Shaw's EEO claim asserted she was denied overtime on two dates, May 7, 2008, and July 16, 2008. PID 866 (sealed), 986. However, Shaw's motion for summary judgment argued she was denied overtime on her off days, Tuesdays and Wednesdays, eleven times between May and mid-July 2008,[3] in retaliation for her protected EEO activity in February 2008. She maintains that two similarly-situated co-employees who had no prior EEO activity, Phyllis Baker and Derek Ragland, were granted overtime. Appellant Br. at 12.

The USPS denied that Shaw's supervisors refused to schedule her for overtime, explaining that Shaw was the most junior mail-processing clerk and that "overtime is rotated

---

[3] *See, e.g.*, PID 752, Shaw Mo. for Summ. J. On appeal, Shaw argues that she was denied overtime on between fourteen to twenty occasions during that period. Appellant Br. at 31-32.

based on the Overtime Desired List." Employees choose whether to be placed on the Overtime Desired List and those on the list are ranked by seniority[4] and offered overtime in order of seniority. PID 774-83; *see also* PID 1388, 1403, Airport Station Manager Bertram Tate Affidavit; PID 771-95.

The MJ determined that, assuming Shaw was denied overtime, it did not constitute an adverse employment action as it would not have dissuaded a reasonable worker from making a charge of discrimination, and, further, that Shaw failed to show a causal connection between her protected EEO activity in February 2008 and the alleged denial of overtime beginning 2 ½ months later. PID 1757-58. We agree that Shaw failed to show a causal connection.

Shaw did not show that her superiors violated the seniority policy when offering overtime; she did not demonstrate that she was entitled to overtime on any specific dates over the co-workers who worked those days. PID 1757. It is undisputed that employees on the Overtime Desired List are offered overtime in order of seniority on a rotating basis. That is, once overtime is settled for one day, the next opportunity for overtime is offered to the next person on the list, and once all on the list are offered overtime, the rotation in order of seniority begins again. PID 1234, Shaw dep. The documents relied on by Shaw are not self-explanatory and do not establish that the policy was violated.

## 2. Unsafe Environment

Shaw's work shift at the Airport Station began at 4:00 a.m. She asserted below that she was required to work alone at the Airport Station on four Sundays—May 11, 18, and 25, and June 1, 2008—while co-employee Phyllis Baker was on leave for four weeks (May 9 through

---

[4] The parties agree that seniority is calculated from the date employment at the Airport Station began.

June 1, 2008). PID 779, 1247. Shaw claims that normally, when one employee is going to be out, someone else is assigned to work, but that in her case, no other employee was brought in. Appellant Br. at 34. Shaw challenges the MJ's determinations that she provided no evidence that she ever worked alone and that no reasonable juror could find that she suffered an adverse employment action by having to work alone on the four Sundays while Baker was off. Appellant Br. at 34.

USPS submitted evidence that it was under a directive from local Postmaster Mitchell to reduce overtime during this period, and that it would have had to pay overtime had it assigned an employee to work with Shaw. PID 1282, Williford dep. The record does not show whether any other employee at the Airport Station worked alone during this period.

On Friday, May 9, 2008, Shaw complained to supervisor Williford and Station Manager Tate that she feared coming in alone at 4:00 a.m. on Sundays. Shaw also requested EEO counseling. On June 18, 2008, Shaw submitted an EEO complaint stating that she worked alone in an unsafe environment on the four Sundays. PID 887. An EEO mediation held on June 27, 2008 did not resolve Shaw's complaint. PID 889. However, Shaw testified that Tate came in on the Sunday following the mediation, and that immediately after, her work hours were changed so she would no longer work alone. *See* PID 921-22, 1247.

We agree with Shaw that she provided evidence that she worked alone from 4:00 a.m. to 7:00 a.m. on four Sundays. PID 887. But we also agree with the MJ's ultimate determination that a factfinder could not conclude "that a reasonable employee would have found the challenged action materially adverse." *Laster*, 746 F.3d at 719. Nor is it a reasonable inference that Shaw worked alone as retaliation for protected activity.

### 3. <u>Reassignment</u>

In 2008, declining mail volume led USPS officials to cut staff at some locations, including the Airport Station, and to reassign them to other postal facilities. PID 857. Shaw asserts that her position at the Airport Station was abolished and she was reassigned to the downtown Processing and Distribution Center (PD & C) effective January 3, 2009 not, as USPS contends, because cuts had been mandated due to declining mail volume and because she was the most junior mail-processing clerk at Airport Station, but rather, in retaliation for her EEO activity. Shaw claims that PD & C station is twenty-two miles from her home, while the Airport Station is three miles away, and that the PD & C position "was extremely undesirable" and "was hard and dirtier work," and argues that there are issues of fact regarding whether USPS needed to reduce the number of clerks at the Airport Station and whether she was the most junior clerk there. Appellant Br. at 36.

Shaw does not claim that local Postmaster Mitchell, the official who made the decision to institute personnel cuts (with input from Managers not including Tate or Williford), had knowledge of her prior EEO activity. Shaw testified that she did not know Mitchell and that Mitchell had no involvement in her prior EEO matters. Nor has Shaw presented evidence to support that the instituted cuts in personnel were unnecessary. And the record establishes that a number of employees were cut from the Airport Station. Indeed, employees throughout Memphis USPS had their positions abolished and some were reassigned to PD & C. PID 1575 (sealed); 1305-1319; 1320-1328 (reassignment).

Finally, relying on Postmaster Mitchell's testimony, Shaw claims that there is an issue of material fact whether there was one section or two at the Airport Station and whether she was the most junior employee. Mitchell testified that it was unsettled whether there were one or two

sections at the Airport Station and that the issue was ultimately resolved in consultation with the union based on factors having nothing to do with Shaw. Shaw has not shown that the determination that there were two sections was in retaliation for her protected activity. Labor Relations Specialist Joseph Pegues's declaration states that at the time Shaw was assigned to the Airport Station in November 2007, there were two sections, window clerks and mail-processing clerks, and that Shaw was the junior-most employee in the mail-processing section. PID 958. Shaw effectively concedes that if there were two sections at Airport Station, she was the most junior mail-processing clerk without window duties. PID 923.

Shaw did not show that the USPS officials who determined to abolish her position at the Airport Station and reassign her to the PD & C violated the seniority policy or that they had any knowledge of her protected activity. Shaw thus failed to show that a causal connection existed between these actions and any protected activity. *See Morris*, 201 F.3d at 792.

### 4. Retreat Rights

Shaw's last claim is that she attempted to exercise her retreat rights to return to the Airport Station in January 2009 and July 2009, but was not given the opportunity to return until July 2010. Shaw maintains that Phyllis Baker,[5] who had no prior EEO activity, got the first bid. Appellant Br. at 40.

The letters notifying Shaw that her position at the Airport Station was being abolished stated that she would retain the right to return upon the first residual vacancy in her salary level after employees at the Airport Station completed bidding. PID 1741. A job becomes residual if it is posted in a particular section and no one in that section bids on it. *Id.* Shaw admitted on deposition that since she was no longer at the Airport Station, she was not eligible for in-section

---

[5] Baker had more seniority than Shaw.

bidding there. PID 937-39. The MJ concluded that there were no residual vacancies at the Airport Station after Shaw was reassigned to PD & C, PID 1768, and Shaw has not shown otherwise.

No reasonable juror could find under these circumstances that the alleged denial of retreat rights would dissuade a reasonable worker from bringing a discrimination charge. *Laster*, 746 F.3d at 719.

### III.

Federal Rule of Civil Procedure 56(f)(3) permits a district court, after giving notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." A district court's decision to grant summary judgment sua sponte is subject to two standards of review; the substance of the decision is reviewed de novo, under normal summary-judgment standards, and the procedural decision for abuse of discretion. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). "A district court does not abuse its discretion in sua sponte granting summary judgment so long as the losing party was on notice that it had to come forward with all of its evidence [and had a] reasonable opportunity to respond to all the issues to be considered by the court." *Bennett*, 410 F.3d at 816 (internal quotations omitted).

Shaw's counsel's response to the district court's show-cause order included a motion for reconsideration, which argued that the order "is inherently defensive and will likely result in abuse of discretion, and reversible error." PID 1828. Shaw argued that USPS's failure to

respond to her motion for summary judgment as to the two[6] remaining claims "should be dispositive," that she should be allowed to proceed to trial on these remaining claims, and that a sua sponte grant of summary judgment "is inherently prejudicial to Plaintiff's rights to trial by jury . . . and is contradictory to the design and purposes of FRCP Rule 56." PID 1825-26.

Shaw relies on a 2007 amendment to Rule 56(c), (d), and (e) that changed the term "shall" to "should" in recognition that "courts will seldom exercise the discretion to deny summary judgment when there is no genuine issue as to any material fact." Shaw maintains that, by not responding to her motion for summary judgment on her hostile-environment retaliation claim, USPS "did not put forward any genuine issue." PID 1826, Appellant Br. at 44. But the 2010 amendments to Rule 56 restored "shall" and, more importantly, "the authority to grant summary judgment sua sponte was made explicit in the [2010] version of Rule 56." *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014); *see also Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013).

The district court complied with Rule 56(f)(3). Its show-cause order put Shaw on notice that she needed to come forward with all evidence regarding her hostile-environment retaliation claim. PID 1807. The district court also gave Shaw reasonable opportunity to respond. The court initially gave the parties fourteen days to respond to its show-cause order. PID 1808. However, Shaw's newly-retained counsel moved for and was granted additional time to respond. PID 1811, 1814.

Summary judgment on Shaw's hostile-environment retaliation claim was also substantively proper. Retaliatory harassment or hostile environment occurs "when the workplace

---

[6] At argument before this court, Shaw abandoned her state claim of intentional infliction of emotional distress.

is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Bourini v. Bridgestone/Firestone N. Am. Tire, LLC*, 136 F. App'x 747, 750 (6th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). For the reasons discussed *supra*, the conduct Shaw alleges is not severe or pervasive and a reasonable person would not find it hostile or abusive.

We AFFIRM the district court's grant of summary judgment to USPS and its sua sponte grant of summary judgment on Shaw's remaining hostile-work-environment retaliation claim.